UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| Heather Spain | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 CV 50066 |
| | ) | Magistrate Judge Iain D. Johnston |
| Nancy A. Berryhill, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This is a back-pain disability case. The administrative law judge ("ALJ") found plaintiff not disabled primarily because he believed that the objective evidence was inconsistent with plaintiff's subjective allegations of pain. The ALJ also rejected an opinion from plaintiff's primary care physician. The briefs in this case are relatively short, and cover issues routinely raised in this Court by these counsel. As explained below, the Court finds that a remand is required because, among other things, the ALJ improperly "played doctor."

### **BACKGROUND**[2]

In 2011, plaintiff attempted suicide by jumping out of a third story window. She survived but fractured several vertebrae. She had two spine surgeries to correct the problem but the pain persisted.

Dr. Jorge Villacorta was her primary care physician during this time. In March 2015, he referred plaintiff to Dr. Ishmeet Singh, a pain management specialist, who recommended that plaintiff increase her dosage of Norco, and that she also take Gabapentin and Flexeril. Over the

---
[1] Nancy A. Berryhill has been substituted for Carolyn W. Colvin. Fed. R. Civ. P. 25(d).
[2] The following is overview is taken largely from plaintiff's opening brief. The Government has not disputed the accuracy of this summary.

1

next year or so, Dr. Singh performed multiple steroid injections to treat the pain. In January 2016, Dr. Singh prescribed morphine in addition to plaintiff's other medications. He also stated that plaintiff had failed caudal injections and S1 injections and recommended a spinal cord stimulator trial.

On June 11, 2015, plaintiff visited Dr. Villacorta to get a statement to support her disability application. That same day, Dr. Villacorta provided a letter stating as follows:

> Chronic lower back pain.
> Heather has restrictions: -No lifting, no standing for longer periods of time, elevate legs when sitting, no prolonged walking.

R. 431.

On December 21, 2015, an x-ray showed the possible loosening of screws at S1 in plaintiff's lumbar spine.

On March 7, 2016, plaintiff saw Dr. Konstantin Slavin for a surgical consultation. He stated that plaintiff had a "significant spinal sagittal deformity" and that her symptoms included "both neurogenic claudication, as well as radiculopathy, multilevel, along with imaging that is consistent with lumbar sagittal deformity." Dkt. #13 at 2. He recommended that plaintiff be evaluated by a "complex spine surgeon" and, if surgery was not possible, that plaintiff be recommended for a spinal cord stimulator.

**DISCUSSION**

Plaintiff raises three arguments. First, the ALJ played doctor in analyzing the objective evidence. Second, the ALJ failed to consider Dr. Slavin's treatment records. Third, the ALJ erred in not following the treating physician rule. The Court finds these arguments justify a remand.

**Playing Doctor.** Plaintiff complains that the ALJ made judgments about what was significant (or not significant) in the physical examinations by plaintiff's various treating doctors

and in the MRI and x-ray reports. This Court agrees. In the decision, the ALJ included a narrative of the medical visits, which was ostensibly a neutral summary but as inevitably the case, also included value judgments about which findings were significant. For many of the medical visits that the ALJ chose to focus on, the ALJ declared that the findings were "unremarkable," and thus supposedly undermined plaintiff's allegations. The ALJ summarized the overall findings by stating that "[o]bjective clinical findings did not include any positive straight leg raising, and gait was normal on all evaluations except one." R. 25. It is possible that the ALJ's intuitions are correct, but the problem is that there are no medical opinions to support the ALJ's analysis. There was one State Agency opinion cited to by the ALJ, but the ALJ only referenced it generically, and this opinion did not reach the same specific conclusions as the ALJ did, and it did not even focus on the same office visits. In short, there is no evidence that the ALJ was relying on this analysis.

Also, plaintiff's treating physicians, who made the particular examination findings cited by the ALJ, did not describe them as being "unremarkable" overall. For example, the ALJ concluded that findings made by Dr. Singh, at the March 31, 2015 visit, were "unremarkable aside from tenderness." R. 24. However, Dr. Singh's review of the musculoskeletal systems only stated the following: "She exhibits tenderness. She exhibits no edema." R. 493. It is not clear to this Court that these two findings are unremarkable. Would not tenderness be a confirmation of plaintiff's pain? More broadly, Dr. Singh gave no indication elsewhere in these notes that he doubted plaintiff's pain allegations. His subsequent actions likewise gave no such indication. A month later, he gave plaintiff an epidural steroid injection and then later gave her more injections. R. 496. If the examinations were truly unremarkable, it would raise a question about

3

why he performed these procedures. None of plaintiff's other treating doctors questioned the sincerity of his pain allegations either.

Given the lack of a supporting medical opinion, the ALJ's analysis necessarily rested on his layperson analysis of the meaning of these examination findings and also the MRI and other reports. This is a ground for remand. *See Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018) ("The MRI results may corroborate Akin's complaints, or they may lend support to the ALJ's original interpretation, but either way the ALJ was not qualified to make his own determination without the benefit of an expert opinion."); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (ALJs should not "play doctor" by summarizing the results of a medical exam without input from an expert).

**Dr. Slavin's Records.** Even if the ALJ did not play doctor, the Court would still remand based on the second argument, which is that the ALJ failed to analyze the treatment records from Dr. Slavin, who plaintiff saw in March 2016 for a surgical consultation. Plaintiff argues that Dr. Slavin's observations and opinions further support his claim. This Court agrees. The mere fact that plaintiff was referred for a surgical evaluation undermines the ALJ's criticism that plaintiff "has not been involved with additional surgical intervention." R. 25.

In the decision, the ALJ noted, without mentioning Dr. Slavin by name, that plaintiff had gone for an evaluation with a doctor on March 7, 2016. R. 24. The ALJ then briefly summarized the findings from this visit, stating that the examination "revealed antalgic gait, intact sensation, and positive sagittal balance." R. 24. However, plaintiff complains that this was a bland summary that omitted the larger, more important conclusions—specifically, that the doctor found that plaintiff had a "significant" sagittal deformity, that he was referring her to an evaluation by a "complex spine surgeon"; that if she were not a candidate for surgery, then she "would become a

failed back surgery syndrome" and would be "a good candidate for pain management, including a spinal cord stimulator." R. 588. Plaintiff argues that this evidence bolstered her case, and thus should have been considered. This Court agrees. *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) (an ALJ may not use a "sound-bite" approach in which favorable evidence is cited but unfavorable "related evidence" is ignored). Notably, in its response, the Government never responded to this argument, thus essentially conceding that the ALJ's analysis was incomplete.

**Treating Physician Rule.** Plaintiff argues that the ALJ failed to apply the checklist of factors in rejecting Dr. Villacorta's opinion. The ALJ's analysis consisted of the following two rationales:

> This opinion is given little weight, as it is inconsistent with the objective clinical findings made on the same date. [Furthermore], the restrictions of "longer periods of time" and "prolonged" walking do not provide detailed specific restrictions that would result in any accurate residual functional capacity.

R. 24. The Government argues that an ALJ "need not discuss every [checklist] factor" but only must "minimally articulate" the reasons why the opinion was rejected, and then argues that the above explanation is adequate. Dkt. #16 at 3. The Court disagrees. The ALJ's "analysis" of the treating physician rule was woefully insufficient. Even accepting the Government's more lenient approach, the Court finds the ALJ's analysis was insufficient.

The ALJ's first rationale was that Dr. Villacorta's letter was inconsistent with his own findings "made the same date." However, it is not clear that there were inconsistent findings made that day. The notes are short and vague about whether Dr. Villacorta performed any extensive evaluation at this visit or whether he was, instead, merely responding to the letter request by relying on his prior treatment history with plaintiff. R. 438-49. Even the Government, in its brief, concedes that there were no inconsistent findings, as the ALJ claimed, but merely an alleged lack of confirmatory findings. *See* Dkt. #16 at 4 ("While it may have been more correct

5

to say that the clinical findings did not support Dr. Villacorta's opinions, rather than that they were inconsistent with the opinions, this imperfection is not fatal."). A broader problem with the ALJ's approach is that he only considered Dr. Villacorta's findings made on *that particular day*, without acknowledging that Dr. Villacorta had an ongoing relationship with plaintiff. It is reasonable to assume that the opinion letter reflected this deeper, long-term relationship and was not based solely on the one visit on June 11th.

Another problem with the ALJ's inconsistency argument is that the ALJ never assessed the consistency of Dr. Villacorta's opinion as compared to the other medical opinions. In particular, both Dr. Singh and Dr. Slavin treated plaintiff. It would make sense, therefore, to see whether their observations and diagnoses were consistent with—or alternatively undermined— Dr. Villacorta's opinion. But instead of making this comparison, the ALJ instead simply looked at Dr. Villacorta's opinion in isolation and then, narrowing the lens even tighter, just looked at one day's treatment notes. A more comprehensive review should be undertaken on remand.

The ALJ's second rationale—that the opinion lacks "detailed specific restrictions"—is partially true, but is a weak basis for simply disregarding the opinion altogether. As a preliminary matter, not all of the recommendations lacked specificity. Two of the four limitations (no lifting and elevate legs when sitting) were absolute statements requiring no subjective interpretation. As for the other two limitations (plaintiff can't stand for "longer" periods or engage in "prolonged" walking), it is possible that different people might disagree at the margins about what precise hourly limitations are envisioned by these terms. But the issue here is whether plaintiff could do light work, which would require six hours of standing or six hours of walking.[3] It is difficult to imagine how six hours would not constitute "prolonged"

---

[3] At the hearing, plaintiff testified that she couldn't "walk a long distance" and "not even a short distance without hanging onto something." R. 42.

walking under any reasonable interpretation of that word. The ALJ's concerns about vagueness would carry more weight if the proposed RFC included a much shorter limitation on walking, say one hour. Finally, to the extent that the ALJ believed that Dr. Villacorta's limitations were ambiguous, the better approach would have been to seek an updated opinion from the doctor.

In sum, the ALJ's analysis was incomplete and relied too heavily on layperson analysis of the medical findings. Also, although not directly raised by plaintiff as an argument, the ALJ's decision rests almost entirely on the rationale that there was no objective evidence to support the pain allegations. In fact, the ALJ indicated that that the objective did not provide "strong support" for plaintiff's allegations, suggesting that the ALJ may have believed that the objective evidence must be clear and overwhelming to believe a claimant. However, as set forth in SSR 96-7p, pain allegations "may not be disregarded solely because they are not substantiated by objective medical evidence." *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) ("an administrative law judge may not deny benefits on the sole ground that there is no diagnostic evidence of pain"); *Adaire v. Colvin*, 778 F.3d 685, (7th Cir. 2015) ("[The ALJ's] principal error, which alone would compel reversal, was the recurrent error made by the Social Security Administration's administrative law judges, and noted in many of our cases, of discounting pain testimony that can't be attributed to 'objective' injuries or illnesses—the kind of injuries and illnesses revealed by x-rays.").

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted, the government's motion is denied, and this case is remanded for further consideration.

Date: June 25, 2018            By: _____
                                                                      Iain D. Johnston
                                                                      United States Magistrate Judge